## State of Vermont v. John McQuillen

[518 A.2d 25]

No. 85-088 .

Present: Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.

Opinion Filed October 3, 1986

Philip H. White, Orleans County State's Attorney, and Thomas D. Anderson, Deputy State's Attorney, Newport, for Plaintiff-Appellee.

Gregory P. Howe, Newport, for Defendant-Appellant.

**Gibson, J.** Defendant was convicted after trial by jury of operating a vehicle while under the influence of intoxicating liquor. 23 V.S.A. § 1201(a)(2). He appeals on the ground that the admission of the numerical result of a blood-alcohol-content test, without evidence relating the test result back to the time of operation, was prejudicial and contravenes the holding in State v. Dumont, 146 Vt. 252, 255, 499 A.2d 787, 789 (1985). We agree. Accordingly, we reverse and remand.

In this case, an expert testified as to the minimum number of standard drinks a person weighing either 150 or 175 pounds would have to consume in order to attain a .10% blood alcohol content (B.A.C.); that the average alcohol elimination rate is .015% per hour; and that defendant's B.A.C. was .13% The State contends that the theoretical testimony regarding the relationship of weight and alcohol consumption, considered in conjunction with the average elimination rate, rendered the numerical test result meaningful to the jury, even though the result was not related back to the time of operation.

The argument misconstrues our holding in *Dumont*. The expert testimony relied on by the State fails to give meaning to the numerical test result as an indicator of *this* defendant's B.A.C. at the time of the offense. In fact, to the extent that this evidence purported to explain the .13% figure, it could only have added to the confusion of the jury because of the State's failure to establish a logical link between this evidence and the blood level of the defendant at the moment of the offense.

It is important that evidence of the numerical test result be treated with care in a prosecution under 23 V.S.A. § 1201(a)(2). Under the related provision of 23 V.S.A. § 1201(a)(1), it is a violation of law for a person to operate a motor vehicle on a highway while there is .10% or more by weight of alcohol in his blood. Relating the numerical test result back to the time of operation is an important safeguard against the possible misapplication of this technical evidence by the jury. When the related back numerical result is introduced into evidence, 23 V.S.A. § 1204(a)* provides a ready guide to the trial court for instructing the jury as to what inference it may draw or presumption it may apply to that result. See, e.g., *State* v. *Dacey*, 138 Vt. 491, 497, 418 A.2d 856, 859 (1980) (in § 1201(a)(2) prosecution, State is entitled to a jury instruction that there is a permissive inference that defendant was

---

\* Section 1204(a) states:

    (a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating, attempting to operate or in actual physical control of a vehicle on a highway, the amount of alcohol in the person's blood or breath at the time alleged as shown by analysis of the person's blood or breath shall give rise to the following presumptions:

    (1) If there was at that time 0.05 per cent or less by weight of alcohol in the person's blood or breath, it shall be presumed that the person was not under the influence of intoxicating liquor.

    (2) If there was at that time in excess of 0.05 per cent but less than 0.10 per cent by weight of alcohol in the person's blood or breath, such fact shall not give rise to any presumption that the person was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor.

    (3) If there was at that time 0.10 per cent or more by weight of alcohol in the person's blood or breath, as shown by analysis of the person's blood or breath, it shall be presumed that the person was under the influence of intoxicating liquor in violation of section 1201(a)(2) or (3) of this title.

under the influence if jury finds that defendant had a blood alcohol content of .10% or more at time of operation).

We note that, in this case, only thirty minutes passed between apprehension of the defendant and application of the test, while in *Dumont* the test was administered one hour and ten minutes after apprehension. Nevertheless, we cannot say that the elapsed time here was de minimis. If the State elects to introduce numerical results into evidence, it should be prepared to establish the relevance of those results, as we clearly indicated in *Dumont*. In the event the State does not introduce the required relation-back evidence, we reiterate that the test result is not thereby rendered irrelevant. Under these circumstances, while the State may be foreclosed from utilizing the actual *numerical* result, evidence that the test "demonstrates that the defendant did, in fact, consume intoxicating liquor" may still be introduced. *Dumont, supra,* 146 Vt. at 255, 499 A.2d at 789.

*Reversed and remanded.*

**Peck, J.,** dissenting. Because of the failure of the prosecution to relate the numerical results of the blood alcohol content test back to the time of operation, I joined the Court in *State* v. *Dumont,* 146 Vt. 252, 499 A.2d 787 (1985), in reversing the conviction. Although I had some personal reservations that the time lapse between the stop and the test (one hour and ten minutes) was sufficient to be significant or prejudicial, I felt nevertheless that it might at least have been borderline. For that reason I was willing to give the defendant the benefit of the doubt. This case is different; not only does it extend the holding in *Dumont* on highly technical grounds, it ignores, indeed the opinion does not even note or discuss, any of the other evidence of intoxication presented by the State. These are faults I cannot accept; accordingly, I am compelled to dissent.

I simply cannot credit the postulate implicit in the majority opinion that defendant's blood alcohol content (BAC) could change in any significant degree within the brief thirty minutes that elapsed between the stop and the test. Nevertheless, even if there might have been a change, if the BAC was *declining* during that period, then clearly it had been higher than .13 thirty minutes earlier; on the other hand, if the BAC had *risen* during the period, there was clear and convincing *physical* evidence that de-

fendant was legally intoxicated when he was stopped by the police. His vehicle was seen by an·officer of the Newport Police Department speeding through the city at approximately 3:15 a.m. The officer followed the vehicle for approximately a mile and observed that in negotiating curves in the road the vehicle crossed over the center line. At that point the officer stopped the van, and found the driver and sole occupant was the defendant. The officer detected a strong odor of an alcoholic beverage in the van; later, at the police station, the officer who administered the breath test detected the odor of an alcoholic beverage on defendant's breath.

The officer who stopped the van noted that defendant's speech, and his gait when he walked to the cruiser, were both uncertain, and that his eyes were watery. His eyes were described as bloodshot by the second officer at the police station.

Individuals charged in Vermont with the commission of a criminal act are guaranteed certain rights and protections by the United States Constitution as well as the Constitution of this State. Nevertheless, the Supreme Court of the United States has cautioned its lower courts, that in applying those rights in criminal cases, they should guard against becoming "impregnable citadels of technicality." *United States* v. *Hasting,* 461 U.S. 499, 509 (1983). Commenting further, the Court applied its harmless error doctrine announced in *Chapman* v. *California,* 386 U.S. 18 (1967), saying:

> Since *Chapman,* the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.

*Hasting, supra,* at 509.

This Court approved the harmless error doctrine and applied it as recently as *State* v. *Nash,* 144 Vt. 427, 434, 479 A.2d 757, 761 (1984). Nevertheless, the majority in this case have retreated from our adoption of the doctrine. Defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). The physical evidence of that violation and the brief time period between the stop and the breath test were such that, whether defendant's BAC might have been rising or declining during that period is meaningless under the facts of this case. The basis of the majority opinion is overly technical and, assuming the failure of the prose-

cution to "relate back" was error at all here, it was harmless error. I am unable to believe that the defendant was prejudiced.

I see today's result as virtually mandating a per se reversal in every case where there is a failure to relate back, regardless of the brevity of the time between a motor vehicle stop and a subsequent breath or blood test, even if it is a matter of five minutes, and regardless of the strength of other evidence offered by the prosecution. Although I admit to being puzzled as to why the State did not "relate back," which I should think would ordinarily be a matter of routine, I deplore the reasoning employed by the majority for the result reached here.

I would affirm.