779 P.2d 1261

Donald Lee DESMOND, Petitioner,

v.

SUPERIOR COURT of MARICOPA
COUNTY, and the Honorable Rudolph
J. Gerber, a judge thereof; Mesa City
Court, and the Honorable Harold Reeb,
a judge thereof, Respondents,

and

STATE of Arizona, By and Through
the MESA CITY PROSECUTOR,
Respondent/Real Party in Interest.

Robert Ward DAVID, Petitioner,

v.

SUPERIOR COURT of YAVAPAI COUN-
TY, and the Honorable Richard
Anderson, a Judge thereof; Prescott
City Court, and the Honorable Robert
W. Kuebler, a Magistrate thereof, Re-
spondents,

and

STATE of Arizona, By and Through the
PRESCOTT CITY PROSECUTOR, Re-
spondent/Real Party in Interest.

Nos. CV–88–0416–SA, CV–88–0439–SA.

Supreme Court of Arizona,
In Banc.

April 6, 1989.

Reconsideration Denied Sept. 26, 1989.

Michael J. Dew, Phoenix, for petitioners Donald Lee Desmond and Robert Ward David.

Lowell D. Hamilton, Mesa City Prosecutor by Kevin R. Hays, Chief Asst. City Prosecutor, Mesa, for respondents/real parties in interest.

Roderick G. McDougall, Phoenix City Prosecutor by Mark L. Barry, and M. Regina Huerta, Asst. City Prosecutors, Phoenix, amicus curiae.

Frederick S. Dean, Tucson City Atty. by R. William Call, Asst. City Atty., Tucson, amicus curiae.

Roger J. Blake, Phoenix, amicus curiae.

Richard M. Gerry, P.C. by Richard M. Gerry, Phoenix, amicus curiae.

CAMERON, Justice.

## I. JURISDICTION

Donald Lee Desmond and Robert Ward David petitioned this court for writs of special action. We accepted jurisdiction and consolidated the two matters. We also allowed the filing of *amici curiae* briefs. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5 and Ariz.R.P.Sp. Act. 4.

## II. QUESTION PRESENTED

In accepting the petitions for special action, we ordered the parties to submit supplemental briefs directed to the following issue:

Is a defendant's blood alcohol level admissible in evidence, absent evidentiary foundation relating the blood alcohol level at the time of the test to that which existed at the time of apprehension?

## III. FACTS

The facts necessary for determination of this matter are as follows:

### A. *Donald Lee Desmond*

At about 1:30 a.m. on 19 July 1986, a police officer observed Donald Lee Desmond driving a car in Mesa, going through a red light, traveling between 90 and 100 miles per hour on the freeway, weaving in and out of traffic, and crossing three lanes of traffic to exit from the freeway. The police officer stopped Desmond and observed symptoms of intoxication including the odor of alcohol and bloodshot, watery eyes. At approximately 2:15 a.m., less

than an hour after the time he was stopped, Desmond submitted to two intoxilyzer tests resulting in readings of 0.138 and 0.132 percent blood alcohol content (BAC), respectively. Desmond admitted that he had consumed two shots of peppermint schnapps between 12:30 and 1:00 a.m., within an hour of his arrest. Because of Desmond's physical disabilities, the police officer did not ask Desmond to take any field sobriety tests. Desmond was cited for violation of A.R.S. § 28–692(A) and (B) which read:

A. It is unlawful and punishable as provided in § 28–692.01 for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

B. It is unlawful and punishable as provided in § 28–692.01 for any person to drive or be in actual physical control of any vehicle within this state while there is 0.10 or more alcohol concentration in the person's blood or breath at the time of the alleged offense.

Prior to trial, the court granted the state's motion to dismiss the charge under A.R.S. § 28–692(B).

At trial, evidence showed that the breathalyzer test machine was certified and that the officer was qualified to administer the test. Evidence also showed that the officer followed the required checklist in administering the intoxilyzer breath test. *See* A.R.S. § 28–692.03(A)(4). The state introduced the breath test results pursuant to the statutory method of introduction provided by A.R.S. § 28–692.03(A) and (B). On cross-examination of Thomas Frank Simonick, a criminalist for the City of Mesa Police Department and an "expert in the field of ... blood alcohol testing," the defense elicited testimony concerning Desmond's BAC at the time he was stopped.

Q: Mr. Simonick, the defendant had a shot of Schnapps or shot of liquor at 12:30 in the morning, a.m. I'm talking about after midnight. And a double shot at one o'clock in the morning and then was seen driving 20 minutes later, is there any way that you could tell this jury what that defendant's blood alcohol level was at the time of driving given the

fact that he had a breath test of [0.13] an hour after the driving?

A: Just so I follow this, said that his last drink was at 1:00 in the morning —.

Q: Yes sir.

A: And he was stopped at 1:20?

Q: Yes.

A: Okay. Now —.

Q: And the test was at 2:17 a.m.

A: Mmm hmm. No, you can't.

Q: Is that because all the alcohol has gotten absorbed in his body at the time of driving?

A: Yes, that last drink.

Q: Yeah. And in fact, we would not expect to see under those conditions, significant impairment until about what time after the drinking or even insignificant impairment, any kind of impairment? About what time would you expect under those—that hypothetical, Mr. Simonick?

A: Well, you said that at, at 12:30 he had a drink?

Q: One shot. Yeah.

A: Yeah.

Q: A shot and then a double shot at one o'clock in the morning. The driving's at 1:20. When should we expect to see a, a full absorption of alcohol? And we'll even assume—what is—what is an empty stomach? Is it not eating for two hours or not eating for—how long is an empty stomach?

A: Well, there's no way of really saying specifically. I usually look at it somewhere in the order of three or four hours after a full meal.

Q: A full meal.

A: Yeah.

Q: Okay. Say it was approximately three hours after the full meal.

\* \* \* \* \* \*

A: Then I'd say essentially an empty stomach.

Q: Alright.

A: I'd say that, that based on the information you've given me would—at the—actually the time of the stop he would've definitely absorbed all or part of his first

drink and I would think that would probably put him somewhere in the order of around a 0.03.

This was the only testimony regarding Desmond's BAC at the time he was stopped. Over defense counsel's objections, the court gave the following instruction to the jury:

> If there was at the time of the defendant's driving 0.10 per cent or more by weight of alcohol in the defendant's blood, it may be presumed that the defendant was under the influence of intoxicating liquor.

The trial judge did, however, further instruct the jury as requested by Desmond concerning the nonconclusiveness of the presumption:

> The fact that the defendant's blood alcohol is .10 or higher does not conclusively establish or imply that the defendant was driving under the influence of alcohol. The burden of proving beyond a reasonable doubt that the defendant was driving under the influence of alcohol is the sole responsibility of the State, and the statutory limit of .10 does not relieve them of that burden.

Desmond was convicted by a jury of the violation of A.R.S. § 28–692(A). He appealed the conviction and the Maricopa County Superior Court affirmed. Desmond then sought relief in this court by the instant petition for special action.

### B. *Robert Ward David*

Petitioner Robert Ward David was charged with violating A.R.S. § 28–692(A) and (B) and was convicted of both offenses in the Prescott City Court.

The state's only witness was the arresting officer. The officer testified that he saw David run a stop sign at about 1:00 a.m. The officer stopped David and observed that his walk was unsteady, and that there was the smell of alcohol on his breath. David admitted to having had three drinks at a local bar prior to being stopped and a six-pack of beer earlier that afternoon around 3:00 p.m. Based upon this evidence, David was arrested and taken to the Yavapai County Sheriff's Office where he submitted to an intoxilyzer test.

The arresting officer was also the operator of the machine. At trial, the judge admitted into evidence the officer's operating permit, the certification of the test machine and a certified copy of the intoxilyzer log book. The results of the intoxilyzer test taken approximately an hour after David was stopped indicated a BAC of 0.13 percent. A second test taken approximately five minutes later indicated a BAC of 0.12 percent. Defense counsel attempted to qualify the officer as an expert. David weighed 215 pounds, and the officer was asked the following questions:

> Q BY MR. LARSON [DEFENDANT'S ATTORNEY]. And insofar as three drinks for a 215 pound man, that'd be like one and a half drinks for a 100 pound person, right?
>
> A I'd say that was—
>
> THE COURT: Excuse me. I think that's getting into the role of expert testimony. There's not an objection, but I'm not sure that that's probative, I think absent some further foundation, counsel.
>
> Q BY MR. LARSON: You had this alcohol training at the academy wherein you learned, did you not, that body weight is, ah, directly proportional to the subsequent blood-alcohol content dependent upon the amount of alcohol ingested?
>
> A That's correct.
>
> Q So to ask the question again—
>
> MR. ERICKSON [THE CITY ATTORNEY]: I would—I would still say that—that he's not qualified—
>
> THE COURT: If I'm going to get an expert—I'm going to need an expert. There's no qualifications to go into these hypothetical questions with this witness. The objection is sustained.
>
> \*    \*    \*    \*    \*    \*
>
> Q. . . . Ignoring the alcohol that he might have ingested at Matt's which he told you he did, from the time of the afternoon alcohol ingestion would it be about ten hours?
>
> A Yes.

Q  And you learned, did you not, in your alcohol training at the academy that a person burns off alcohol at a given rate?

A  That's correct.

Q  And that's usually phrased as somewhere in the area of one drink or one beer per hour, is that—

A  Yes.

Q  Okay.  So whether Mr. David shared a six pack or drank a full six pack on his own, there would have been sufficient time for all of that afternoon alcohol to have been burned off and oxidized, whatever you want to call it—

THE COURT: Counsel, we're back to the problem I talked about earlier.  There are people who testify as experts in that area.  I don't believe he's qualified to do that, and I'm not sure that that's probative.  So I'm not going to allow that question.

MR. LARSON: Well, let me explore it if I might, Your honor—

THE COURT: Okay.

*     *     *     *     *     *

Q  BY MR LARSON:  Officer, your training on this alcohol identification and influence identification, did that not encompass I believe you indicated a block of twelve hours or something?

A  Twenty hours, sir, for the last test and I took 12 hours at the academy when I was getting the first training.

Q  And when—to the extent that you were taught anything relative to the get—the body's ability to get rid of alcohol, what was that that you were taught?

MR. ERICKSON:  Your Honor, I'm afraid that's still a—

THE COURT: Sustained.

As noted above, the arresting officer was the state's only witness.  After his testimony, the defense moved for a directed verdict of acquittal on the ground that the state had not presented any testimony relating the test results back to the time of driving or otherwise correlated the test results to David's driving.  The city court judge denied this motion, which was affirmed on appeal by the respondent superior court judge.  David sought relief in this court by way of a special action.

We accepted both petitions for special action because this is a matter of statewide concern and a matter in which there appears to be a wide divergence of opinion and application.

## IV.  ADMISSIBILITY OF THE TEST RESULTS

The relevant statutes read as follows:

A.  The results of a breath test administered for the purpose of determining a person's blood alcohol level are admissible as evidence in any trial, action or proceeding for a violation of § 28–692 upon establishing the following requirements:

1.  The test was performed using a quantitative breath testing device approved by the department of health services.  A properly authenticated certification by the department of health services is sufficient to establish this requirement.

2.  The operator who conducted the test possessed a valid permit issued by the department of health services to operate the device used to conduct the test.

3.  An operator observed the person charged with the violation for twenty minutes immediately preceding the administration of the test.

4.  The operator who conducted the test followed an operational checklist approved by the department of health services for the operation of the device used to conduct the test.  The testimony of the operator is sufficient to establish this requirement.

5.  The device used to conduct the test was in proper operating condition.  Records of periodic maintenance which show that the device was in proper operating condition at a time before and after the test are admissible in any proceeding as a prima facie evidence that the device was in proper operating condition at the time of the test.  Such records are public records.

B.  Compliance with subsection A of this section is the only requirement for the

admission in evidence of the breath test result.

A.R.S. § 28–692.03(A), (B).

We have held that evidence that complies with this statute (a trained operator using a reliable testing device) may be admitted into evidence.

We hold, therefore, that the statutes are to be construed to mean just what they say. The test results will be "valid" if "performed according to methods approved by the department of health services" A.R.S. § 28–692(G), and thus will be "admissible" when it is established that the agency had complied with the standards required by A.R.S. § 28–692.03(A) and the rules promulgated under subsection B.

*Fuenning v. Superior Court,* 139 Ariz. 590, 602, 680 P.2d 121, 133 (1983).

Under A.R.S. § 28–692(A) and (B), there are two different crimes involved in driving and drinking. Subsection A proscribes driving while under the influence of intoxicating liquor. Under subsection A, the driver's BAC is immaterial to the extent that the ultimate guilt of the driver is based on the impairment of the driver not his BAC. As to subsection B, the legislature has made it a crime to drive with a BAC of 0.10 percent or more. Whether the driver is under the influence or otherwise impaired is immaterial, as long as there is 0.10 percent or more alcohol in the blood at the time the driver was stopped.

■ Many variables may affect the results of a blood alcohol test including the type of machine used in the test, the weight, sex, and physical condition of the driver, any medication the driver might be taking, how much food is in the driver's stomach at the time of the test (the more food in the driver's stomach, the less alcohol will be absorbed into the blood stream) and how long after driving the test was administered. *See* Dubowski, *Absorption, Distribution and Elimination of Alcohol: Highway Safety Aspects,* J. Stud. on Alcohol, Supp. No. 10 at 98, 99 (July 1985). Of

critical importance is whether the BAC was rising or falling at the time of the test which is usually administered about an hour after the driver is stopped and arrested. If the BAC is falling at the time the test is administered, the reading will be less than what the BAC was at the time the driver was stopped. *See* Dubowski, *supra,* at 103–06. If the BAC is rising, the reading will be greater than the BAC at the time the driver is stopped. *Id.* In some instances, the BAC will rise after the driver is stopped, peak and then recede, producing a BAC that is the same as the BAC at the time the driver was stopped. *Id.* at 104. Accordingly, there can be no presumption that a driver's BAC taken at the time he is stopped is as high as his BAC taken an hour later.[1] *Id.* at 106. The BAC at the time of the test is, however, relevant evidence in determining the BAC at the time of arrest. For example, a reading of 0.20, twice the presumptive level of 0.10, taken an hour after arrest will be strong evidence that the defendant was driving with a reading of more than 0.10.

We believe that the result of a blood or breath test taken after the driver has been stopped and arrested is relevant under Rule 401, Ariz.R.Evid., and admissible under A.R.S. § 28–692.03(A), (B). *See Fuenning,* 139 Ariz. at 602, 680 P.2d at 133 (1983). Such evidence would be evidence having a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz.R.Evid 401. This would be true as to subsection A (driving under the influence) or subsection B (BAC of 0.10 percent or more).

■ We hold that the results of an intoxilyzer test taken within a reasonable time after arrest are relevant and may be admitted into evidence without a foundation relating the BAC back to the time of the arrest. The proper procedure to be followed when a party offers the BAC result into evidence without any relation-back

---

**1.** We do not agree with the statement to the contrary in *Logan v. Brown,* 151 Ariz. 96, 100– 01, 725 P.2d 1130, 1134–35 (App.1986).

testimony is for the court to admit the portion of the test result that indicates the presence of alcohol in the blood—but not the percentage—with an instruction pursuant to Rule 105, Arizona Rules of Evidence, that the evidence is admitted for the limited purpose of showing that, at the time of the test, defendant had alcohol in his blood and that such evidence without more may not be used for the purpose of showing defendant was under the influence or the amount as a percentage of blood alcohol at any specific time. *See Readenour v. Marion Power Shovel, Inc.*, 149 Ariz. 442, 450, 719 P.2d 1058, 1066 (1986). This does not mean, however, that such evidence standing alone is sufficient to obtain a conviction under either subsection A or B of A.R.S. § 28–692.

■ Our statute reads:

E. In the trial of any civil or criminal action or proceeding for a violation of subsection A of this section relating to driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor ... the amount of alcohol in the defendant's blood at the time alleged as shown by analysis of the defendant's blood, urine, breath or other bodily substance gives rise to the following presumptions:

\* \* \* \* \* \*

3. If there was *at that time* 0.10 or more alcohol concentration in the defendant's blood or breath, it may be presumed that the defendant was under the influence of intoxicating liquor.

A.R.S. § 28–692(E) (emphasis added).

This statute applies only to subsection A offenses (driving while under the influence). The statutory presumption is that if the BAC of the driver at the time of the arrest is shown to be 0.10 percent or more, it is presumed that the driver was under the influence while driving. This presumption is not unreasonable, but it must be based on evidence that there was "at that time" a BAC of 0.10 percent or more.

We believe that in order for the statutory presumption of A.R.S. § 28–692(E) to apply, there must be testimony relating the BAC back to the time of the arrest. All relevant evidence may be considered by the trier of fact in determining whether or not the driver was, at the time of arrest, driving under the influence of intoxicating liquor. However, in order for the statutory presumption to apply or any instruction to be given, there must be some evidence of the BAC at the time the defendant was stopped and not just at the time of the test.

■ We concede that relating the BAC back to the time of arrest will most often require testimony by someone qualified as an expert. Such expert testimony should not, however, be difficult to obtain. An expert witness is one who by training, education, profession or experience possesses superior knowledge about the subject matter in question. Ariz.R.Evid. 702, 17A A.R.S.; *State v. Jessen*, 130 Ariz. 1, 7, 633 P.2d 410, 416 (1981). Because a person is a police officer does not disqualify him from being an expert witness, even if he was the arresting officer. *State v. Kevil*, 111 Ariz. 240, 247, 527 P.2d 285, 292 (1974); *Killingsworth v. Nottingham*, 18 Ariz.App. 356, 357–58, 501 P.2d 1197, 1198–99 (1972).

We believe that in defendant David's case, the arresting officer, who was also the operator of the test device, might have been qualified as an expert in this limited area. This was not done and whether to allow someone to testify as an expert witness is usually within the discretion of the trial judge. *Bliss v. Treece*, 134 Ariz. 516, 518, 658 P.2d 169, 171 (1983); *Mammo v. State*, 138 Ariz. 528, 533, 675 P.2d 1347, 1352 (App.1983). We do not disturb the trial court's ruling in this regard. Because the matter will have to be remanded for a new trial, the trial court may reconsider its rulings in light of this opinion.

## V. SUMMARY

■ What we say here is simply that evidence of a driver's blood alcohol content taken within a reasonable period of time after arrest is admissible if A.R.S. § 28–692.03 is complied with. Such evidence, however, standing alone, does not make a *prima facie* case of a violation of either subsection A or subsection B of

A.R.S. § 28–692. In order for the state to receive the statutory presumption instruction in a charge under subsection A or to make a *prima facie* case under subsection B, there must be some evidence relating the BAC back to the time of arrest. This evidence can be supplied by an expert witness. Such "expert witness" can be a police officer or the operator of the machine if properly certified and in addition possesses superior knowledge, experience and expertise on the question.

## VI. DISPOSITION

### A. *Donald Lee Desmond*

■ In *Desmond,* there was sufficient evidence of impaired driving to go to the jury even though the state's expert testified that Desmond's BAC was only 0.03 percent at the time of the arrest. There was, however, no expert testimony that the BAC at the time of the arrest was 0.10 percent or more. Therefore, there could be no presumption that Desmond was driving under the influence of intoxicating liquor "at that time." The trial judge's instruction on the presumption mandated by A.R.S. § 28–692(E)(3) was in error, and this error was not cured by giving Desmond's requested instruction on the conclusiveness of the presumption and the burden of proof. As to Donald Lee Desmond, we reverse the conviction and remand for a new trial.

### B. *Robert Ward David*

■ In *David,* the state merely introduced into evidence the result of the breath test pursuant to A.R.S. § 28–692.03 and rested. As to subsection A of A.R.S. § 28–692 (driving while under the influence), it was error to instruct the jury as to the presumption of the statute without expert testimony relating the BAC back to the time of arrest. The conviction under Section A is reversed and a new trial granted.

As to subsection B of A.R.S. § 28–692 (BAC of 0.10 percent or more), there was no attempt to relate the reading back to the time of the arrest. There was insufficient evidence to establish a *prima facie* case of

a violation of subsection B. David's motion for a directed verdict should have been granted. We reverse the conviction under subsection B as not being supported by the evidence.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.