**UNITED STATES of America, Plaintiff,**

v.

**Gary J. WIGHT, Defendant.**

**No. 94–1698M.**

United States District Court,
D. Colorado.

April 18, 1995.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court for trial on March 3, 1995. Plaintiff was represented by James Winchester, Assistant United States Attorney, and Defendant was represented by Stuart Keown. At the conclusion of the case, the Court granted each side

---

the opportunity to file written closing arguments. Those have been received and reviewed by the Court. Further argument is waived.

### I.

At approximately 6:15 a.m. on November 3, 1994, National Park Service Ranger Patricia McGlynn–Shafer was contacted by the dispatcher for the Estes Park, Colorado Police Department. Ranger McGlynn–Shafer was advised that a report had been received by an Estes Park police officer that an automobile accident had occurred in Rocky Mountain National Park (Park). Since the local police officer had no authority to investigate the accident, Ranger McGlynn–Shafer was contacted.

Ranger McGlynn–Shafer arrived at approximately 7:00 a.m. at a location in the Park approximately two miles west of the Fall River Entrance station. This location is on U.S. Highway 34, commonly called the Trail Ridge Road. At the time of the accident, Highway 34 was closed farther west due to winter snow conditions.

Ranger McGlynn–Shafer found a vehicle off the road. Snow had fallen at the location of the accident. Defendant was seated in the driver's seat of the car. Defendant was not injured, and Ranger McGlynn–Shafer helped Defendant out of the car. As she helped Defendant from the car, Ranger McGlynn–Shafer noted a strong odor of alcohol on Defendant's breath, bloodshot eyes, and slow speech. Defendant was asked what had happened, and he responded that did not remember going off the road. Defendant acknowledged that he had been drinking the night before, having consumed four or five beers.

Suspecting that Defendant was under the influence of alcohol, Ranger McGlynn–Shafer asked Defendant to perform a series of field sobriety tests. Defendant was asked to and did perform the Rhomberg test, walk and turn, and finger to nose. Ranger McGlynn–Shafer determined that Defendant's performance on these tests was consistent with someone who was intoxicated. Defendant was arrested and placed in the Ranger's patrol vehicle.

Defendant then was transported to the Estes Park Police Department for a breath test. On duty at that time was Captain Randy Repola, an officer of the Estes Park Police Department who was certified as an operator of the Intoxilyzer 5000. Captain Repola testified that he observed Defendant for twenty minutes and then had Defendant blow into the machine. The intoxilyzer was working correctly and returned a result of 0.151 grams of alcohol per 210 liters of air. The breath test was conducted at 8:27 a.m.

Ranger McGlynn–Shafer then issued Defendant a violation notice. In turn, Defendant appeared before the Court and entered a plea of not guilty. He consented to trial before a United States Magistrate Judge.

### II.

Defendant was charged on the violation notice with a violation of 36 C.F.R. § 4.23(a)(2). This regulation was enacted by the Secretary of the Interior (Secretary) on behalf of the National Park Service. This regulation reads, in part, as follows:

(a) Operating or being in actual physical control of a motor vehicle is prohibited while:

(2) The alcohol concentration in the operator's blood or breath is 0.10 grams or more of alcohol per 100 milliliters of blood or 0.10 grams or more of alcohol per 210 liters of breath. *Provided however*, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

This section of the regulation establishes a so-called "per se" offense. This section creates a different offense from that in 36 C.F.R. § 4.23(a)(1) which is the traditional driving under the influence "of alcohol ... to a degree that renders the operator incapable of safe operation ..."

During the course of the trial, Defendant objected to the introduction of any breath test results. Defendant argued that the test result was, in and of itself, irrelevant to the

"per se" charge, as at least two and one-half hours had elapsed from the time of the accident. Defendant further argued that, without an opinion from an expert witness, there was insufficient evidence to sustain the "per se" charge. The Court took these issues under advisement in order to review any case law that might apply to this charge.

The violation notice that was the charging document specifically alleged § 4.23(a)(2) and delineated that the violation occurred within the boundaries of the Park. Federal law applies to this violation, including relevant evidentiary considerations. *United States v. Hambsch,* 748 F.Supp. 343 (D.Md.1990); *United States v. Farmer,* 820 F.Supp. 259 (W.D.Va.1993).

■ Defendant's argument first is that the test results should not be admitted. This is premised upon the view that the breath test was too remote in time to have any probative value. This Court disagrees.

Federal Rule of Evidence 402 provides that all relevant evidence is admissible, unless otherwise prohibited by the Constitution, statute, or by court rule. The Court has not been referred to any federal statute or rule that precludes admission of the test results. The Secretary has not set a time limit by which a test must be administered. *See* 36 C.F.R. § 4.23(c). The federal implied consent statute does not provide a time limit. *See* 18 U.S.C. § 3118.

There is no indication that the intoxilyzer was not operating correctly or that the test was not administered properly. The fact that the test was taken at least two and one-half hours after the accident does not affect its admissibility. The Colorado Court of Appeals' analysis of a similar issue is helpful.

Contrary to defendant's contention, the delay in obtaining samples did not affect the validity or reliability of the test, nor did it affect the admissibility of the test results. (cit. omitted). The "reasonable time" limitation is to ensure that the request for the test is made close enough in time to the alleged offense that the results

will be relevant in the determination of a defendant's sobriety at the time of the incident. (cit. omitted). And, while the timeliness of the blood test may affect its accuracy, evidence which relates to the accuracy of a chemical test affects the weight to be accorded the evidence, rather than its admissibility. (cit. omitted).

*People v. Emery,* 812 P.2d 665 (Colo.App. 1990). The test result is thus admissible in this case.

■ The second prong of Defendant's attack in the case relates to an alleged failure by the prosecution to prove its case as to the "per se" charge.[1] The argument is that there was no evidence to establish the amount of alcohol in the Defendant's system at the time that he was last driving or in actual physical control of the vehicle. Defendant has cited a number of state cases to support his argument. No cases have been cited and none were found that dealt with this exact issue as it pertains to this regulation.

Enactment of § 4.23(a)(2) established a prohibition as to driving with blood or breath concentrations in excess of 0.10. That level is reduced if local state law so provides. The alcohol concentration must be at the time of driving or actual physical control. As to § 4.23(a)(1), there must only be a finding that the driver had consumed alcohol and/or drugs and was "incapable of safe operation." A chemical test result may lead to a presumption of intoxication, but blood or breath concentrations less than 0.10 do not lead to the conclusion that a driver was not intoxicated and capable of safe vehicle operation. 36 C.F.R. § 4.23(d).

No cases have been found that deal with the proof requirements of § 4.23(a)(2). A few state courts throughout the country have dealt with the issue, as raised under state law. Plaintiff has cited *Desmond v. Superior Court of Maricopa County,* 161 Ariz. 522, 779 P.2d 1261 (1989). In that case, the Arizona Supreme Court examined the problem of

---

**1.** Defendant also has raised an issue of lack of evidence as to driving or actual physical control. The evidence is sufficient to establish, by circumstantial evidence, beyond a reasonable doubt that

Defendant was driving the vehicle found off the road and was in actual physical control of it. *See, United States v. Coleman,* 750 F.Supp. 191, 193–95 (W.D.Va.1990).

dealing with a chemical test taken some time after the traffic stop.

Many variables may affect the results of a blood alcohol test including the type of machine used in the test, the weight, sex, and physical condition of the driver, any medication the driver might be taking, how much food is in the driver's stomach at the time of the test (the more food in the driver's stomach, the less alcohol will be absorbed into the blood stream) and how long after driving the test was administered. See Dubowski, Absorption, Distribution and Elimination of Alcohol: Highway Safety Aspects, J. Stud. on Alcohol, Supp. No. 10 at 98, 99 (July 1985). Of critical importance is whether the BAC was rising or falling at the time of the test which is usually administered about an hour after the driver is stopped and arrested. If the BAC is falling at the time the test was administered, the reading will be less than what the BAC was at the time the driver was stopped. (cit. omitted). If the BAC is rising, the reading will be greater than the BAC at the time the driver was stopped. (cit. omitted). In some instances, the BAC will rise after the driver is stopped, peak and then recede, producing a BAC that is the same as the BAC at the time the driver was stopped. Accordingly, there can be no presumption that a driver's BAC taken at the time he is stopped is as high as his BAC taken an hour later.

*Id.* at p. 527, 779 P.2d at p. 1266. In examining the need for expert testimony to establish the level of intoxication at the time of driving, the court held:

We hold that the results of an intoxilyzer test taken within a reasonable time after arrest are relevant and may be admitted into evidence without a foundation relating the BAC back to the time of the arrest. The proper procedure to be followed when a party offers the BAC result into evidence without any relation-back testimony is for the court to admit the portion of the test result that indicates the presence of alcohol in the blood—but not the percentage—with an instruction pursuant to Rule 105, Arizona Rules of Evidence, that the evidence is admitted for the limited purpose

of showing that, at the time of the test, defendant had alcohol in his blood and that such evidence without more may not be used for the purpose of showing defendant was under the influence or the amount as a percentage of blood alcohol at any specific time.

*Id.* at p. 527, 779 P.2d at p. 1266. The court then held that before any presumption could apply, "there must be some evidence of the BAC at the time the defendant was stopped and not just at the time of the test." *Id.* at p. 528, 779 P.2d at p. 1267.

Other courts have agreed with the general concept that there must be evidence that "relates back" the test to the actual time of driving. *State v. McQuillen,* 147 Vt. 386, 518 A.2d 25 (1986). *State v. Ladwig,* 434 N.W.2d 594 (S.D.1989); *cf., State of New Mexico v. Scussel,* 117 N.M. 241, 871 P.2d 5 (App.1994), *cert. denied,* 117 N.M. 215, 870 P.2d 753 (1994). Though not specifically applicable to this case, the applicable Colorado statute provides for a violation if the alcohol level is above 0.10 or more grams of alcohol per hundred milliliters of blood or 0.10 or more grams of alcohol per 210 liters of breath "at the time of driving or within two hours after driving." Colo.Rev.Stat. § 42–4–1301(2)(a).

Based upon all of the evidence presented, the Court finds that the prosecution has failed to prove beyond a reasonable doubt that Defendant had 0.10 or more grams of alcohol per 210 liters of breath at the time Defendant was "operating or being in actual physical control of a motor vehicle", as required by § 4.23(a)(2). Plaintiff chose to proceed on the "per se" violation. By doing so, it had an obligation under the regulation to establish the alcohol concentration at the time of driving or actual physical control. The test result at 8:27 a.m. was insufficient, in and of itself, to establish what Defendant's concentration was at 6:15 a.m., or even at 7:00 a.m. Once Plaintiff chose to proceed on the "per se" violation, it had to present qualified evidence that "related back" the test results to the time of driving or actual physical control. No such qualified testimony was offered in this case.

IT IS HEREBY ORDERED that Defendant is found not guilty of the charge of violation of 36 C.F.R. § 4.23(a)(2), as the prosecution failed to prove beyond a reasonable doubt that Defendant had a concentration of 0.10 grams of alcohol per 210 liters of breath at the time he was driving or in actual physical control of his vehicle.