775 P.2d 1095

**STATE of Arizona, Appellee,**

v.

**Todd Kevin GARDFREY, Appellant.**

**No. CR–86–0367–AP.**

Supreme Court of Arizona,
En Banc.

June 20, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Paul J. McMurdie, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Former Maricopa County Public Defender, Dean Trebesch, Maricopa County Public Defender by John W. Rood, III, Maricopa County Deputy Public Defender, Phoenix, for appellant.

GORDON, Chief Justice.

A jury convicted Todd Kevin Gardfrey (defendant) of aggravated assault and manslaughter, and found that both offenses were of a dangerous nature. Defendant was on probation at the time of the crimes. The trial court sentenced defendant to concurrent life sentences. We have appellate jurisdiction under art. 6, § 5(3) of the Arizona Constitution, and A.R.S. §§ 13–4031 and 13–4033. We reverse.

FACTS

Defendant and the victim, Esther Lanell Gacad (Lani) shared a stormy romantic relationship. During part of 1985, they lived together in Phoenix. At least twice during that time, Lani received treatment for physical injuries she received from defendant. In January, 1986, Lani broke up with defendant and moved into a Mesa trailer park with her aunt.

On February 1, 1986, defendant telephoned twice and once came to the trailer looking for Lani. On all three occasions, the aunt told defendant Lani was not there. That night, Lani planned to go out with her friend, Dana Weikert. Lani's aunt left the trailer at approximately 8:45 p.m., when Lani was still preparing to go out. On the way to the trailer, Dana called Lani for directions. Lani told her she would walk out to the street because the trailer was hard to find. When Dana arrived at the trailer park she could not find Lani. After driving into the park, she heard a shot and saw a person who looked like defendant run and jump over a fence to an adjacent apartment complex. Dana continued to look for Lani, but never found her.

At approximately 9:00 p.m., Harry Holloway, the park's part-time maintenance man and security guard heard Lani crying, "Don't hurt me," or "Let me go." Upon investigation, he saw defendant holding

Lani and forcing her to walk down the sidewalk. Harry confronted him, and defendant said, "I can argue with my girlfriend if I want to." Defendant continued forcing Lani along the sidewalk when Harry heard her say, "You're killing me." Harry got closer and defendant reached out and stabbed him in the side. Defendant and Lani fell to the ground. Harry watched defendant repeatedly hit Lani in the chest area in an erratic manner. Harry said, "Knock it off." Defendant responded, "I'll kill you," or "I'll kill you too." Harry then fired his gun in the air, and defendant ran and jumped over the fence. Lani died from multiple stab wounds.

Defendant called his mother later that night and told her that he "cut his girlfriend" and was going to kill himself. He went to visit relatives in San Diego and, on February 2, 1986, turned himself in. Defendant stated to San Diego authorities that he had killed his girlfriend.

At trial, defendant raised the insanity defense. Expert testimony conflicted. Dr. Bayless, a psychologist, testified that in his opinion, defendant suffers a borderline personality disorder that would predispose him to brief reactive psychosis. Brief reactive psychosis is a phenomenon in which persons subjected to a "stressor" or stressful events break from reality for short periods of time. Dr. Bayless believed that defendant suffered a brief reactive psychosis when Harry confronted him with Lani, thus rendering defendant legally insane at the time he stabbed Lani and Harry. Dr. Potts, the jail psychiatrist, testified that defendant has a mixed personality disorder, but had no opinion as to whether defendant was insane at the time of the stabbings.

Dr. Dean, a psychiatrist, testified that in his opinion defendant was sane at the time of the stabbings. Dr. Enos, a psychologist, testified that in his opinion, based on the tests conducted by Dr. Bayless, defendant was probably malingering.

The trial judge instructed the jury that defendant had to prove his insanity by clear and convincing evidence. He defined clear and convincing as follows:

> [T]he evidence should be clear in the sense that it is certain, plain to the understanding and unambiguous. It must also be convincing in the sense that it is so reasonable and persuasive as to cause you to believe it.

The jury found defendant guilty of aggravated assault and manslaughter. Defendant now appeals from the convictions and sentences.

## DISCUSSION

Defendant argues that the trial judge erroneously defined clear and convincing as certain and unambiguous for purposes of the insanity defense. During the pendency of this appeal, we decided *State v. King*, holding that an essentially identical jury instruction constituted fundamental error requiring reversal. 158 Ariz. 419, 763 P.2d 239 (1988). A grand jury indicted King on first-degree murder and attempted first-degree murder. At trial, King's primary defense was insanity. Evidence of his insanity conflicted. The judge instructed the jury that:

> The defendant has the burden of proving that he is not responsible for criminal conduct by reason of insanity by clear and convincing evidence.
>
> To be clear and convincing, evidence should be clear in the sense that it is certain, plain to the understanding, unambiguous, and convincing in the sense that it is so reasonable and persuasive as to cause you to believe it.

*King*, 158 Ariz. at 421, 763 P.2d at 241. King did not object to the instruction at trial, but argued on appeal that the instruction was fundamental error.

We held this instruction erroneously escalated the defendant's burden of proof. Additionally, the error was fundamental because the instruction materially misstated King's burden on the primary issue; it went, necessarily, to the very heart and foundation of his case, damaging his case on a matter essential to his defense. 158 Ariz. at 425, 763 P.2d at 245. *See State v. Thomas*, 130 Ariz. 432, 435–36, 636 P.2d 1214, 1217–18 (1981) (fundamental error reaches the foundation of the case or takes

from the defendant a right essential to his defense, or is an error of such dimensions that it cannot be said it is possible for the defendant to have a fair trial). Because the error was fundamental, King did not waive the issue by failing to object at trial.

■ Today we hold that principles of fairness require us to apply *King* retroactively to cases not yet final on September 22, 1988, the date we decided *King*. As the United States Supreme Court stated:

> The nature of judicial review ... precludes us from "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule."

*Griffith v. Kentucky*, 479 U.S. 314, 323, 107 S.Ct. 708, 713, 93 L.Ed.2d 649, 658 (1987) (citation omitted). The court further stated, "selective application of new rules violates the principle of treating similarly situated defendants the same." *Griffith*, 479 U.S. at 323, 107 S.Ct. at 713, 93 L.Ed.2d at 658.[1] Thus, we will apply *King* to all cases pending on direct review or not yet final.

■ The differences between the instruction in *King*, and the instruction at defendant's trial are insignificant. As in *King*, defendant's primary defense was insanity. If defendant was unable to prove his insanity, he would almost certainly be convicted because, for all practical purposes, he admitted the crimes when he raised insanity as his only defense. The instruction ladened defendant with the almost impossible burden of proving his insanity by certain and unambiguous evidence. Given the divided expert testimony in this case, we conclude that the error went to the very foundation of defendant's case and took from him a right essential to his defense. We are unable to say beyond a reasonable doubt that the error did not

---

1. We believe *Griffith* requires retroactive application of all new constitutional rules to criminal cases pending on direct review or not yet final on the day the new rule is announced. However, *Griffith* does not require retroactive application of new non-constitutional rules. *Wood v.*

contribute to or affect the verdict. *King*, 158 Ariz. at 424–26, 763 P.2d at 244–46.

Therefore, we reverse the convictions and sentences and remand for a new trial consistent with this opinion. Because of this disposition, we find it unnecessary to consider the other issues raised by defendant.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.

*Goodfarb*, 155 Ariz. 32, 33, 745 P.2d 90, 91 (1987). We express no opinion on whether the type of fundamental error involved in *King* is a constitutional rule. Our decision to apply *King* to this case is based on principles of fairness.