823 P.2d 63

**STATE of Arizona, Appellee,**

v.

**Jorge G. MENDOZA, Appellant.**

**No. 1 CA–CR 89–518.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 27, 1990.

Review Granted March 20, 1991.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., and Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EHRLICH, Judge.

The defendant was convicted of driving while under the influence of intoxicating liquor (DUI) with two prior convictions, and driving with a blood-alcohol content of 0.10 or more with two prior convictions, class 5 felonies, in violation of A.R.S. §§ 28–692(A) and (B) and 28–692.01. The imposition of sentence was suspended and the defendant was placed on probation for three years. He was ordered to spend the minimum term of six months in prison. On appeal, he argues that:

(1) his convictions must be reversed because the state failed to present any "relation-back" evidence as required by *Desmond v. Superior Court,* 161 Ariz. 522, 779 P.2d 1261 (1989);

(2) the trial court should have dismissed the case because the 150–day arrest-to-trial rule of *Hinson v. Coulter,* 150 Ariz. 306, 723 P.2d 655 (1986), was violated.

We reach two conclusions. First, *Desmond* applies retroactively to all cases not final at the time *Desmond* was mandated.

Any DUI conviction presently in the appellate court in which there was no relation-back evidence will be examined on a case-by-case basis. Finally, we hold that time is not excluded from the 150–day *Hinson* rule when the state obtains a continuance on the grounds that it is not ready to proceed to trial.

## I. FACTS

The defendant was stopped by a police officer at approximately 1:45 a.m. because his driving was erratic. As the defendant got out of his automobile, he used the car for support. His breath carried a strong odor of alcohol. When asked to produce his driver's license, the defendant searched his wallet and passed over the license three times before the officer pointed it out to him. The officer then administered the standard field-sobriety tests and the defendant's performance was very poor.

The defendant was arrested and taken to the police station where a breath test was administered at 2:31 a.m. It indicated a blood-alcohol level of .21. The defendant admitted to the officer that he had consumed three beers and two drinks. He told the officer that he had started drinking at about 11:00 p.m.

The defendant testified at his trial that he was not drunk the night he was arrested. He told the jury that he had failed the sobriety tests because the officer had spoken quickly in English and he had not understood the officer's directions.

The state did not present any evidence at trial as to how the results of the test administered at 2:31 a.m. related back to the defendant's blood-alcohol content at 1:45 a.m. The defendant moved for a judgment of acquittal on the basis of that gap in the evidence and, when the parties settled the jury instructions, the defendant objected to the instruction on presumptions pursuant to A.R.S. § 28–692(E). The trial court denied the defendant's motion and overruled his objection to the presumption instructions.

## II. RETROACTIVE APPLICATION OF DESMOND

### A. The Desmond Case

In *Desmond*, 161 Ariz. 522, 779 P.2d 1261 (1989), the Supreme Court addressed the question of whether a defendant's blood-alcohol content (BAC) was admissible in evidence, absent an evidentiary foundation relating the BAC at the time of the test to that which existed at the time of driving. *Desmond* actually involved two cases consolidated for disposition. In the first case, the evidence at Desmond's DUI trial established that Desmond had consumed two or three "shots" of liquor between 12:30 a.m. and 1:00 a.m. Twenty minutes later he was stopped by the police and arrested. About an hour later, the police administered a breath test; Desmond's BAC was .13. An expert testified that, based on these facts, Desmond's BAC at the time of driving "would probably put him somewhere in the order of around a 0.03." *Id.* at 524-25, 779 P.2d at 1263-64. The state presented no evidence that Desmond's BAC at the time of driving was 0.10 or more. Over counsel's objections, the jury was instructed that:

> If there was at the time of the defendant's driving 0.10 percent or more by weight of alcohol in the defendant's blood, it may be presumed that the defendant was under the influence of intoxicating liquor.

*Id.* at 525, 779 P.2d at 1264.

In the second case, Robert W. David was tried for DUI and driving with a BAC of .10 or more. The evidence at trial established that David was stopped by the police at about 1:00 a.m. He was arrested and admitted to having had three drinks prior to being stopped, and a six-pack of beer at about 3:00 p.m. Approximately one hour after he was stopped, David submitted to an Intoxilyzer test and the results showed a BAC of .13. Five minutes later, a second test indicated a BAC of .12.

David's counsel attempted to qualify the arresting officer as an expert witness and establish that David's BAC at the time of driving was lower than at the time of the test. The state's objection was sustained.

After the state rested, counsel moved for a directed verdict on the basis that the state had not presented any testimony relating the test results back to the time of driving. The motion was denied.

In reversing Desmond's and David's convictions, the court held that:

> evidence of a driver's blood alcohol content taken within a reasonable period of time after arrest is admissible if A.R.S. § 28-692.03 is complied with. Such evidence, however, standing alone, does not make a *prima facie* case of a violation of either subsection A or subsection B of A.R.S. § 28-692. In order for the state to receive the statutory presumption instruction in a charge under subsection A or to make a *prima facie* case under subsection B, there must be some evidence relating the BAC back to the time of arrest.

*Id.* at 528-29, 779 P.2d at 1267-68.

In reaching this result, the court observed that the Intoxilyzer test usually is administered about one hour after a driver is stopped and arrested. If the BAC is falling at the time, the reading will be less than what the BAC was at the time the driver was stopped. Conversely, if the BAC is rising, the reading will be greater than the BAC at the time the driver was stopped. In some instances, the BAC will rise after the driver is stopped, peak and recede, producing the same BAC as when the driver was stopped. Therefore, the supreme court held that there could be no presumption that a driver's BAC at the time of driving was as high as his BAC taken an hour later. *Id.* at 527, 779 P.2d at 1266.

The court emphasized that a driver's BAC at the time of the test is relevant evidence under Rule 401, *A.R.Evid.* "For example, a reading of 0.20, twice the presumptive level of 0.10, taken an hour after arrest will be strong evidence that the defendant was driving with a reading of more than 0.10." *Id.* The court cautioned, however, that "this does not mean ... that such evidence *standing alone* is sufficient to obtain a conviction under either subsec-

tion A or B of A.R.S. § 28–692." *Id.* at 528, 779 P.2d at 1267. (Emphasis added.) If the proponent of a BAC result wishes to have such evidence admitted without relation-back testimony, only the portion of the test result that indicates the presence of alcohol in the blood is admissible; the specific percentage is not. *Id.* at 527–28, 779 P.2d at 1266–67.

A.R.S. § 28–692(E)(3) directs that the amount of alcohol in the defendant's blood at the time alleged, as shown by an analysis of his blood, urine, breath or other bodily substances, gives rise to the following presumption:

> 3. If there was at that time 0.10 or more alcohol concentration in the defendant's blood or breath, it may be presumed that the defendant was under the influence of intoxicating liquor.

The court said in *Desmond* that although this presumption was not unreasonable, it could not be the basis of a jury instruction unless there was testimony relating the BAC back to the time of arrest.

> All relevant evidence may be considered by the trier of fact in determining whether or not the driver was, at the time of arrest, driving under the influence of intoxicating liquor. However, in order for the statutory presumption to apply or any instruction to be given, there must be some evidence of the BAC at the time the defendant was stopped and not just at the time of the test.

161 Ariz. at 528, 779 P.2d at 1267.

In Desmond's case, the court found that there was sufficient evidence of the driver's impairment to go to the jury even though an expert had testified that Desmond's BAC was only .03 at the time of driving. However, the court stated that because no expert testimony that the BAC at the time of driving was .10 or more, there could be no presumption that Desmond was driving under the influence of intoxicating liquor when stopped. Therefore, the trial court's instruction on the presumption constituted reversible error.

The court reached the same result with regard to David's conviction under subsection A and remanded the matter for a new trial. However, since there was no testimony relating David's BAC at the time of the test back to the time of driving, there was "insufficient evidence to establish a *prima facie* case of a violation of subsection B" and that conviction was reversed.

## B. Retroactivity and Criminal Law

■ In the evolution of the theory of retroactivity, the United States Supreme Court most recently has said that the "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith v. Kentucky,* 479 U.S. 314, 322–23, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987).

> [T]he nature of the judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.

*Id.* Lower courts were instructed to apply a new rule retroactively to cases not yet final. *Id.* "Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule" was inconsistent with proper judicial standards. *Id.* at 323, 107 S.Ct. at 713, quoting *Williams v. United States,* 401 U.S. 675, 679, 91 S.Ct. 1171, 1173, 28 L.Ed.2d 388 (1971), *companion to Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring and dissenting opinion). This approach was consistent with the settled principle of treating similarly-situated defendants in the same way and not leave one to be a "chance beneficiary." *Id.* at 323, 107 S.Ct. at 714, quoting *United States v. Johnson,* 457 U.S. 537, 555–56 n. 16, 102 S.Ct. 2579, 2590 n. 16, 73 L.Ed.2d 202 (1982).

The Court's decision in *Griffith* was particularly significant because, in previous cases, when a new rule represented a

"clear break" with precedent, the Court "[a]lmost invariably [found] such a newly minted principle non-retroactive." *Id.*, quoting *Michigan v. Paine*, 412 U.S. 47, 55–57, 93 S.Ct. 1966, 1970–71, 36 L.Ed.2d 736 (1973) (Brennan, J., dissenting). Notwithstanding the "clear break" line of cases, the Court in *Griffith* held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328, 107 S.Ct. at 716.

Although the *Desmond* decision does not set forth a new constitutional rule, and therefore *Griffith* arguably does not require that *Desmond* be retroactively applied, its application only prospectively would violate the principle of treating similarly-situated defendants the same. Conversely, retroactive application fosters the integrity of the judicial decision-making process and precludes a court from "fishing one case from the stream of appellate review" and allowing similar cases "to flow by unaffected." The reasoning of *Griffith* applies to a case such as this one even if the new rule is not of a constitutional dimension. In *Desmond*, both Desmond and David were granted relief on the basis of the court's holding. Refusal to apply that holding to all other similarly-situated defendants would constitute a departure from proper judicial standards.

In *State v. Adams*, 159 Ariz. 168, 169, 765 P.2d 992, 993 (1988), the supreme court vacated a court of appeals' decision which held that the holding in *State v. Philips*, 152 Ariz. 533, 536, 733 P.2d 1116, 1119 (1987), was not retroactive. The court in *Philips* had held that a criminal defendant must know the amount of restitution before the court accepts his plea agreement. The court of appeals decision reached its result on the grounds that *Griffith* applied only to federal law. It reasoned that because *Philips* dealt only with state law, and because *Philips* represented a "clear break" from prior law, *Philips* should apply prospectively only. *State v. Adams*, 156 Ariz. 88, 92–93, 750 P.2d 31, 35–36

(App.1987). The supreme court vacated the decision, stating that *Philips* did involve constitutionally-protected rights and did not represent a "clear break" with previous law. "With no clear break in precedent, the scales tip in favor of retroactivity and equal treatment for all similarly situated defendants ..." *Adams*, 159 Ariz. at 170, 765 P.2d at 994. *Philips* therefore was held to apply retroactively, "but only, of course, to cases not final at the time we decided it." *Id.* at 171, 765 P.2d at 995.

In the present case, the state argues that *Desmond* represents a clear break from the past and therefore that it should not be applied retroactively. The cases relied on by the state predate the *Griffith* and *Adams* decisions and, while the state's argument is not without support, we believe that *Griffith* and *Adams* control.

First, although some appellate decisions indicate that relation-back testimony was not required, our supreme court never has espoused such a rule. In *State v. White*, 155 Ariz. 452, 747 P.2d 613 (App.1987), the defendant argued that the trial court should have granted his motion for a directed verdict at the close of the state's case because the state had not presented any relation-back evidence. Ultimately the court held that it was not necessary to address the question of whether relation-back evidence was required because it had been introduced in the case before it. The court stated, however:

> It had long been the law in Arizona that relation back evidence is not necessary to admit a BAC reading into evidence in a criminal case. [Citations omitted.] The defendant argues that our supreme court changed the law in *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1984), and now requires relation back.

*Id.* at 455, 747 P.2d at 616.

In *Fuenning*, the supreme court considered a Vermont holding "that expert evidence relating the test result to the time of the occurrence is necessary before the state can rely on a statutory presumption." 139 Ariz. at 598, 680 P.2d at 129, citing *State v. Dacey*, 138 Vt. 491, 418 A.2d 856

(1980). However, the court in *Fuenning* did not specifically adopt the Vermont court's holding. To the contrary, it stated that "[t]he issue of whether the state can carry its burden of proof by merely introducing the test results without other evidence is not presented here, nor do we decide that issue." *Id.* at 599, 680 P.2d at 130. In light of this pronouncement in *Fuenning*, we do not believe that *Desmond* represented such a "clear break" from the past that this factor, standing alone, compels prospective application only of *Desmond.*

In *State v. Gardfrey,* 161 Ariz. 31, 33, 775 P.2d 1095, 1097 (1989), the supreme court held that *State v. King,* 158 Ariz. 419, 763 P.2d 239 (1988), applied retroactively. The court in *King* had concluded that a jury instruction which required the defendant to prove insanity by certain and unambiguous evidence, applied retroactively. Although the court in *Gardfrey* noted that *Griffith* does not require retroactive application of new, nonconstitutional rules, the rationale for *Gardfrey* did not turn on whether *King* established a constitutional or nonconstitutional rule. Rather, the supreme court rested its decision on "principles of fairness [which] require us to apply *King* retroactively to cases not yet final" when *King* was decided. 161 Ariz. at 33, 775 P.2d at 1097. It expressed the concerns quoted above from *Griffith* that one case not be "fished from the stream," allowing similar cases to be unaffected. *Id.*

We perceive no persuasive reason why the rationale articulated in *Gardfrey* would not apply whether the new rule at issue was constitutional or nonconstitutional. We are aware that in other DUI cases, our supreme court has held that various rules are to be applied prospectively only. However, those cases, unlike *Desmond,* specifically state that the decision's effect will take prospective effect only.

In *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979), the supreme court set forth a new requirement regarding the preservation of a suspect's breath sample. The court specifically held that "our ruling today is prospective only from the date of our mandate herein." *Id.* at 357, 604 P.2d at 621. Baca, unlike Desmond and David, did not obtain the benefit created by the court's holding.

In *Hinson v. Coulter,* 150 Ariz. 306, 723 P.2d 655 (1986), the supreme court held that, in DUI prosecutions, if a defendant is not tried within 150 days, prejudice would be presumed and dismissal required. However, "this holding is prospective only and applies to those arrested after the mandate in this case." *Id.* at 311, 723 P.2d at 670. The petitioner again did not obtain the benefit of the rule created by the court's holding.[1]

In *Montano v. Superior Court,* 149 Ariz. 385, 719 P.2d 271 (1986), the supreme court held that the state is obligated to inform a defendant of his right to an independent chemical test. The new rule was held to be prospective only. *Id.* at 393, 719 P.2d at 279.

Absent from *Desmond* is any comparable indication by the supreme court that the decision was intended to apply prospectively only. Therefore, we conclude that *Desmond* applies to all cases not yet final when *Desmond* was decided.[2] The mandate in the *Desmond* case was issued on October 25, 1989. The appeal in this case was filed on April 26, 1989. Although the defendant's trial occurred before the mandate in *Desmond* issued, his case was "in the pipeline" and therefore *Desmond* applies.

## III. APPLICATION OF DESMOND TO THE PRESENT CASE

Applying *Desmond* to the present case, we must reverse the conviction and vacate the sentence imposed for the violation of

1. In *Wood v. Goodfarb,* 155 Ariz. 32, 33, 745 P.2d 90, 91 (1987), the supreme court stated that *Griffith* did not require retroactive application of *Hinson* to all criminal prosecutions then pending and which were not yet final.

2. Very recently, Division Two of this court reached the same result when presented with this issue. *State v. Campa,* 164 Ariz. 468, 793 P.2d 1135 (App.1990).

A.R.S. § 28–692(B). We must also reverse the conviction and vacate the sentence imposed for the violation of A.R.S. § 28–692(A).

### A. Driving With a Blood Alcohol Content of 0.10 or More

■ The court in *Desmond* held that "[i]n order for the state to receive the statutory presumption instruction in a charge under [A.R.S. § 28–692] subsection A or to make a *prima facie* case under subsection B, there must be some evidence relating the BAC back to the time of arrest." 161 Ariz. at 529, 779 P.2d at 1268.

The state argues as to the defendant's conviction pursuant to subsection B that it should be affirmed because no fundamental error was involved. However, fundamental error does not apply to the analysis under subsection B. The state failed to prove a *prima facie* case by not presenting evidence relating the BAC back to the time of arrest. Because the state failed to present sufficient evidence, the defendant's conviction must be reversed. *See State v. Campa*, 164 Ariz. 468, 793 P.2d 1135 (App. 1990) (failure to present evidence of relation-back to time of driving required reversal of defendant's conviction for driving with a BAC of 0.10 or more because evidence insufficient as a matter of law).

### B. Driving While Under the Influence of Intoxicating Liquor

■ A defendant may be convicted of DUI in the absence of testimony relating his BAC back to the time of driving. *Desmond*, 161 Ariz. at 528–29, 779 P.2d at 1267–68. In this case, there was sufficient

evidence of impaired driving to go to the jury. The evidence showed that the defendant's driving was poor, that his performance on the field-sobriety tests was very poor, and that the defendant admitted that he had been drinking. However, there was no expert testimony that the BAC at the time of driving was 0.10 or more. Therefore, there could be no presumption that the defendant was driving under the influence of intoxicating liquor at the time of driving. The defendant objected to the presumption instruction mandated by A.R.S. § 28–692(E)(3), and it was error for the trial court to have so instructed. This error requires reversal. *Desmond*, 161 Ariz. at 529, 779 P.2d at 1268.[3]

If our inquiry were at an end, and because the evidence otherwise was sufficient to go to a jury, we would remand this matter for a retrial of the DUI charge. However, because the state was not ready to proceed to trial within 150 days, that charge must be dismissed.

### IV. APPLICATION OF HINSON TO THE PRESENT CASE

■ In *Hinson*, our supreme court held that a defendant must be tried within 150 days from the date of his arrest. In this matter, the defendant was arrested on May 8, 1988. It was incumbent upon the state to be prepared to proceed to trial within 150 days of that date, excluding any delay attributable to the defendant. *Shepherd v. Fahringer*, 158 Ariz. 266, 269, 762 P.2d 553, 556 (1988).

Any delay occasioned by or on behalf of a defendant rightly is not charged against

---

3. Even if this court could affirm the defendant's DUI conviction on the basis of the *Desmond* analysis, it is questionable whether the conviction could stand. In this case, rather than giving the presumption instruction as set forth in the statute, the trial court chose to instruct the jury that "if there was at that time .10 or more by weight of alcohol in the defendant's blood it *shall be presumed* that the defendant was under the influence of intoxicating liquor." (Emphasis added.) A.R.S. § 28–692(E)(3) sets forth a permissive presumption: "If there was at that time 0.10 or more alcohol concentration in the defendant's blood or breath, it *may be presumed* that the defendant was under the influence of intoxicating liquor." (Emphasis added.) The state bears the burden of proving every element of a criminal offense beyond a reasonable doubt. This burden never shifts. An instruction setting forth a mandatory presumption affects the burden of proof and violates due process. *See generally Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *In re Winship*, 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *State v. Jensen*, 153 Ariz. 171, 735 P.2d 781 (1987). Because we reverse on other grounds, we do not decide if the instruction given in this case was constitutional.

the state, but is excluded from the 150–day rule. Rule 8.4(a); *A.R.Crim.P.* No case has interpreted *Hinson* as allowing for the exclusion of time when the state is simply not ready to proceed to trial.

> ... the *Hinson* case says what it means and means what it says. After excluding any delay attributable to the defendant, the trial of such defendant must commence within 150 days after his arrest.

*Andre v. Tucson City Court,* 165 Ariz. 160, 161, 797 P.2d 699, 700 (App.1990).[4]

On December 2, 1988, the "firm trial" date, and the 141st day (excluding delay occasioned by the defendant), the state was not ready to proceed to trial. The trial court could have continued the trial to Monday, December 12, 1988.[5] However, over the defendant's objection, the trial was continued to December 30, 1988. When the 150th day passed, and the defendant had not been brought to trial, the trial court should have granted the defendant's motion to dismiss.

For the foregoing reasons, the defendant's convictions are reversed.

CLABORNE, P.J., and FRANKS, J., concur.

NOTE: The Honorable PAMELA J. FRANKS was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3.

---

4. In *State ex rel. McDougall v. Gerber,* 159 Ariz. 241, 242, 766 P.2d 593, 594 (1988), the supreme court did hold that the time attributable to the state's appeal from a trial court order dismissing the case was excluded. However, the state has a statutory right to appeal from such an order and, upon dismissal, the trial court is without jurisdiction to proceed.

5. Although the 11/2/88 minute entry shows 12/4/88 as the last day for trial, the defendant's arraignment had been continued for seven days and this time was excluded. Thus, the last day for trial was 12/12/88, the previous day being a Saturday.