In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00147-CR
_____

BRANDON SCOTT POWELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 14-08-09186-CR

**MEMORANDUM OPINION**

Brandon Scott Powell appeals from his conviction for committing aggravated robbery, a crime that occurred in June 2013. *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). Powell was convicted of the charge following a trial before a jury in March 2017. Thereafter, Powell filed a brief, in which he argues his conviction should be overturned for two reasons: (1) during the guilt-innocence phase of the trial, the trial court erred by allowing the jury to consider testimony that the assistant manager of the store where the robbery occurred is now fearful and has lost her sense

1

of security due to the robbery; and (2) the evidence is insufficient to support his conviction.

We conclude that even if the trial court should have excluded the assistant manager's testimony about the after-effects of the robbery on her life, the trial court's error was harmless given all the evidence admitted in Powell's trial. We also conclude the evidence authorized the jury to convict Powell of committing aggravated robbery. For these reasons, we affirm the trial court's judgment.

Background

S.M.[1] was working as an assistant manager at a jewelry store in Montgomery County, Texas, in June 2013. One evening, around 7:00 p.m., several individuals wearing white painter's suits, with their faces covered by painter's masks, entered the store. Jose Villarreal, who later confessed to having masterminded the robbery, was one of the six men who were involved in robbing the store. Villarreal is seen in a videorecording of the June 2013 robbery waving a handgun.

After entering the store, Villarreal told everyone in the store to lie down on the floor. According to S.M., while she was lying on the floor, she heard glass

---

[1] To protect the victim's identity, we identify her by using her initials. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

breaking. She could tell that someone was hitting the cases with an object like "a hatchet[.]" Cameras in the store recorded the robbery as it occurred. The trial court admitted a videorecording of the robbery into evidence during Powell's trial.

The group involved in the robbery left through the store's emergency exit, where they entered the back parking lot. A Montgomery County crime scene investigator, who came to the store the evening the robbery occurred, testified that she found a white painter's mask, items used to display rings, and a pickaxe on the path the group took after leaving the store. The police sent various items that they recovered during their investigation to a lab so they could be tested for the presence of DNA.

The detective in charge of investigating the robbery, Chad May, began investigating the robbery on the day it occurred. During Powell's trial, May testified that an employee of the company that owned the store told him that Jose Villarreal was a suspect in another robbery of one of the other company's stores. Two days later, police in Houston arrested Villarreal and found him with jewels taken during the June 2013 robbery. Shortly thereafter, May interviewed Villarreal in Houston, where Villarreal confessed to his role in the robbery. Villarreal told May the names of all the individuals, except Powell, who were involved in the June 2013 robbery

during his interview. Villarreal also told Detective May where the police could find the disguises and tools the group used to rob the store.

Forensic scientists with a laboratory in Virginia tested six items associated with the June 2013 robbery that the police sent the lab. According to one of the forensic scientists that testified in Powell's trial, a partial DNA profile extracted from a white painter's mask, which police found near the store, matched a DNA profile that she extracted from a swab that police obtained from Powell. According to the forensic scientist, the profiles on these two items "matched one another, and Mr. Powell could not be excluded as a source of the DNA profile" on the painter's mask that police recovered near the jewelry store. During her testimony, the forensic scientist explained that the chance that the DNA from Powell's swab and the painter's mask might randomly match each other is one in 14 million for Caucasians, one in 18 million for African-Americans, and one in 8.3 million for Hispanics.[2]

During the trial, Villarreal testified that he planned the robbery and recruited Powell, his former brother-in-law, to smash the display cases and then grab as much jewelry as possible after entering the store. Villarreal testified that he was the only person carrying a gun during the robbery. He also admitted that he had a lengthy criminal record and that he had received a life sentence for his role in the robbery.

---

[2] These ratios were for males who live in the United States.

4

On cross-examination, Villarreal admitted that initially, he lied to investigators about some of the aspects of the June 2013 robbery and about his role in the robbery of another of the company's stores. Villarreal admitted that he was not completely truthful with Detective May because he failed to give him Powell's name the first time he spoke to Detective May. When Powell's attorney asked whether the mask found near the crime scene could have come from one of Villarreal's construction jobs that Powell worked, Villarreal testified that he could not recall whether Powell had worked for him or if the workers on his construction jobs had worn painter's masks and protective gear.

Powell called two witnesses in his defense, Markitta Benson, his girlfriend and the mother of his child, and his uncle, James Powell. Benson testified: "As of right now I would say [Powell] was with me on [the evening of June 17.]" Benson's testimony was based on her recollection about when the hospital discharged her after she had Powell's child, who was born on June 6, 2013, and on her recollection about how long Powell stayed in her house after she got out of the hospital. Benson testified that at one time, Villarreal employed Powell for a job that involved working construction. On cross-examination, Benson agreed that she never told the police or anyone with the District Attorney's office that Powell was with her when the robbery occurred. Additionally, Benson rejected the suggestion that Powell could have

5

participated in the robbery without her knowing it because she estimated that the store where the robbery occurred is approximately 160 miles from her home. In response to one of the prosecutor's questions, Benson agreed that other than her testimony, she had no other evidence to prove that Powell was with her when the robbery occurred.

James Powell testified that Powell had once worked for Villarreal, but he never explained when Powell worked for Villarreal in relationship to the June 2013 robbery. James agreed, however, that he never saw Powell while he was working on any of Villarreal's construction jobs, and that he just knew that Powell did that kind of work. According to James, Villarreal is not a truthful person. James also explained that he did not have any actual knowledge about where Powell was on the day the June 2013 robbery occurred, but he understood that Powell was with Benson on the day of the robbery because Benson was having a baby.

Analysis

In issue one, Powell argues the trial court abused its discretion by overruling Powell's objection to the relevance of a question posed by the prosecutor to the jewelry store's assistant manager about the impact of the robbery on her life. In response to the prosecutor's question, the assistant manager testified: "Well, I'm a lot more aware of my surroundings. I'm constantly looking over my shoulder.

6

Having keys to a jewelry store, I'm afraid somebody might follow me home because they know I have a key. It's affected me in a lot of ways. I've lost my sense of security."

Before we address the arguments Powell makes to support his first issue, we note the standard of review that applies to rulings admitting evidence. A trial court's decision to admit a witness's testimony is reviewed using an abuse-of-discretion standard. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). On appeal, an appellate court will not disturb the trial court's ruling admitting evidence if the court's ruling falls within the zone of reasonable disagreement. *Id.* And even if a trial court errs by failing to sustain an objection to a witness's testimony, the verdict in the case will not be reversed unless admitting the testimony affected the defendant's substantial rights. Tex. R. App. P. 44.2(b). The Court of Criminal Appeals has explained that a "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750 (1946)).

Generally, evidence about the impact that a crime has had upon a victim's life is not material to proving the elements the State is required to prove to show that a crime occurred. *See Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990);

7

*see also Stavinoha v. State*, 808 S.W.2d 76, 78 (Tex. Crim. App. 1991). As a result, trial courts generally exclude this type of evidence in criminal trials. *Id.* In his brief, Powell argues that the general rule applies in his case. He suggests the evidence about the after-effect of the robbery on the assistant manager's life is not probative on whether he robbed the jewelry store. In response, the State argues that because it charged Powell with *aggravated* robbery, it needed to prove that the individuals[3] who committed the robbery took actions that made the assistant manager fear she would suffer an imminent bodily injury or death.

We need not decide whether the assistant manager's testimony about the after-effect of the robbery on her life was admissible to resolve Powell's first issue. Even if that evidence was not relevant to proving that an *aggravated* robbery occurred, as Powell argues, admitting the testimony did not injure or influence the jury's verdict that Powell committed an *aggravated* robbery. *See* Tex. R. App. P. 44.4(2)(b). In Powell's case, Powell never disputed the evidence established that the assistant manager feared injury or death. In the trial, the assistant manager testified that she feared she would be shot, that she might die, and that other employees and customers in the store could be injured. In closing argument, Powell never suggested to the jury

---

[3] The charge the trial court gave the jury in Powell's case included instructions on the law of parties and conspiracy.

that it should disregard the assistant manager's testimony. The evidence that a gun was displayed during the robbery was also undisputed. The videorecording of the robbery, which was admitted into evidence during Powell's trial, shows how the robbers used handheld pickaxes to smash several glass counters holding jewelry. In final argument, Powell's attorney focused on Powell's alibi that Powell was at his girlfriend's house when the robbery occurred. Additionally, he argued that the remaining evidence connecting Powell to the robbery was not sufficiently reliable to prove that Powell was among the individuals who robbed the store. He did not argue that the State failed to prove that an *aggravated* robbery is the type of robbery that occurred.

In conclusion, the record from Powell's trial contains overwhelming evidence showing that the assistant manager, during the robbery, feared that she could be injured or killed. Even if the trial court erred by admitting the testimony about the after-effects of the robbery on the assistant manager's day-to-day life, we conclude the error did not substantially affect the jury's decision convicting Powell of aggravated robbery. We overrule Powell's first issue.

In issue two, Powell argues the State's evidence identifying him as one of the men who robbed the store was insufficient to allow the jury to conclude that he participated in robbing the store. For example, Powell argues that the DNA

testimony in his case does not corroborate Villarreal's testimony that Powell was present when the robbery occurred. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005) (providing that an accomplice witness's testimony must be corroborated by other evidence "tending to connect the defendant with the offense committed"). But the State was not required to exclude every conceivable alternative that might explain why a DNA profile matching Powell's was on the painter's mask. *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. 2012). And the standard of review that applies to Powell's appeal requires that we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In reviewing the evidence, we are not allowed to "engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence." *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) (citing *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017)). Moreover, juries may draw reasonable inferences from the facts if each inference is supported by the evidence that is admitted during the trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper*, 214 S.W.3d 9, 16-

10

17 (Tex. Crim. App. 2007). We are required to presume that the factfinder resolved any conflicts in the evidence in favor of the verdict that the jury reached. *Merritt*, 368 S.W.3d at 525. In a jury trial, the jury acts as the exclusive judge of the facts, the credibility of the witnesses, and the weight that should be given to the testimony admitted into evidence in the trial. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In reviewing the direct evidence and circumstantial evidence, each may be equally probative of the defendant's guilt, and circumstantial evidence alone may allow an appellate court to uphold a defendant's conviction when the cumulative force of the evidence allowed the jury to reasonably infer that the defendant committed the crime. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

In cases like Powell's, where an accomplice witness testifies, the statutory requirements in article 38.14 of the Texas Code of Criminal Procedure impose a standard that does not otherwise apply under the legal sufficiency standards in *Jackson*. *See Taylor v. State*, 10 S.W.3d 673, 684 (Tex. Crim. App. 2000); Tex. Code Crim. Proc. Ann. art. 38.14. The Court of Criminal Appeals has explained that "[t]he accomplice witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual

11

sufficiency standards." *Cathey v. State*, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999).

In part, Powell suggests that the jury did not properly weigh Benson's testimony in finding him guilty because her testimony provided him with an alibi. But the jury rejected Powell's theory that he was at Benson's house when the store was robbed, and the State did not have the burden to exclude every conceivable alternative to Powell's guilt. *See Merritt*, 368 S.W.3d at 525 (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (explaining that "the evidence is not rendered insufficient simply because appellant presented a different version of the events")). Determining if Benson gave credible testimony is a decision the jury made based on its assessment of Benson's credibility. *See Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013) (noting that "[t]he jury was able to assess the credibility and demeanor of the witnesses who testified at trial"). We conclude that based on the evidence before the jury, the jury could have reasonably found that Powell participated in robbing the store.

Powell also suggests that we must exclude Villarreal's testimony in evaluating whether sufficient evidence supports Powell's conviction. *See* Tex. Code Crim. Proc. Ann. art. 38.14. According to Powell, his DNA could have been on the mask due to a DNA transfer that occurred when he worked a construction job for

Villarreal. However, none of the witnesses testified about when, before the robbery, Powell worked for Villarreal. And none of the witnesses testified they saw Powell working on one of Villarreal's jobs wearing a painter's mask. The fact that Powell presented the jury with an alternative to explain why his DNA might have been transferred to the mask is an alternative hypothesis that the State did not have the burden to disprove. *See Merritt*, 368 S.W.3d at 525.

Here, the record shows that Powell's conviction is supported by more than Villarreal's testimony. The DNA testimony links Powell to a location the jury could have considered as implicating him in the crime. Additionally, testimony other than Villarreal's shows Powell and Villarreal knew each other, another circumstance the jury could have considered to conclude that Powell was one of the men who robbed the store.

Finally, Powell suggests the DNA profile the forensic scientists extracted from the painter's mask fails to sufficiently connect him to the robbery because the profile was not a complete profile of his DNA. Even though the forensic scientists extracted a partial profile, one of the forensic scientists testified to statistics based on the partial profile that allowed the jury to conclude that it is highly likely that Powell's DNA was on the painter's mask found in the vicinity of the store.

In assessing whether the DNA evidence tends to connect Powell to the robbery, we note that "[i]t is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense." *Cathey*, 992 S.W.2d at 462. Based on our review of all the evidence before the jury in Powell's case, we conclude the combined weight of the non-accomplice evidence tends to connect Powell to the robbery that occurred at the store. We hold the corroborating evidence required by Article 38.14 was satisfied based on the evidence before the jury in Powell's trial. *See id*. We overrule Powell's second issue.

For the reasons explained above, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 27, 2018
Opinion Delivered December 5, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

14